UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Central Specialties, Inc.

     Plaintiff,

v.

                            **MEMORANDUM OPINION
AND ORDER**
Civil No. 17-5276 (MJD/LIB)

Jonathan Large and
Mahnomen County,

     Defendants.

_____

     Hugh D. Brown and Kyle E. Hart, Fabyanske Westra Hart & Thomson, PA, and Jeffrey A. Wieland, Moss & Barnett, Counsel for Plaintiffs.

     Michael T. Rengel and Ryan D. Fullerton, Pemberton Law, P.L.L.P, Counsel for Defendants.

_____

     This matter is before the Court on Defendants' Motion for Summary Judgment. [Doc. No. 64]

## I.   Factual Background

     In late 2016, Plaintiff Central Specialties, Inc. ("CSI") submitted the lowest bid to the Minnesota Department of Transportation ("MnDOT") for road work to be performed on State Highway 59 which spanned Becker, Polk and Mahnomen Counties.  (Large Aff. ¶¶ 7 and 8; Ex. A.)  As part of the contract, CSI was to

propose haul roads to be used by CSI to haul material from the material pits located near the project.  (Fullerton Aff, Ex. A (Sweep Dep. at 26).)  Pursuant to its "Standard Specifications for Construction" MnDOT has the ultimate authority to determine which roads will be used as haul roads.  (Id. at 60, Ex. 7 (Specification 2051.3).)

Mahnomen County ("the County") asserts the selection of the haul road is significant to a county, as the county is responsible for the maintenance and upkeep of all of its county roads.  (Large Aff. ¶ 2.)  The type of use, weight and strain placed on the road, the existing condition of the road at the time of use and the time of year, all have an impact on the road.  (Id. ¶ 3.)

Once a haul road is designated by MnDOT, the road is removed from county jurisdiction and MnDOT's contractors are permitted to use the road in connection with a project.  See Minn. Stat. § 161.25.  Once the haul road is released back to the county, state law requires MnDOT to reimburse the county for that use.  Id.

The Standard Specifications for Construction apply to all MnDOT contracts, unless varied for a particular project.  (Fullerton Aff., Ex. C.)  Applicable here, Specification 1515, Control of Haul Roads, provides:

Haul Roads are those public Roads (other than trunk Highways) that the Contractor may use for the purposes specified in 2051.2 "Maintenance and Restoration of Haul Roads, Definitions."

Haul Roads do not include a connection between a natural material source and a public Road.  The Contractor must secure the Rights Of Way for, construct, and maintain such connections between a material source and a public Road, without compensation from the Department other than payment received for the Contract Items.

The Department may, but is not required to, designate haul Roads in accordance with Minnesota Statutes § 161.25.  If the Department has made a written designation of a haul Road, then the Department will have jurisdiction over the public Roads and Streets included in such designation.  The requirements of 2051, "Maintenance and Restoration of Haul Roads," will govern the maintenance and restoration of such haul Roads.

If the Department has not made a written designation of a haul Road, then the Contractor will be responsible for the following:

(1)     Arranging for the use of Roads not under the jurisdiction of the Department,

(2)     Performing any maintenance and restoration as required by the applicable Road authority as a condition of using such Road as a haul Road, and

(3)     Paying any fees, charges, or damages assessed by the applicable Road authority as a condition of using such Road as a haul Road.

All actions and costs with respect to non-designated haul Roads will be without compensation from the Department, other than payment received for the Contract Items.

In preparing its Proposal, the Contractor is not entitled to assume that the Department will designate a haul Road, or that the haul Road designated

> will be the most convenient and direct route or not subject to reduced
> weight limits.  The Department will not consider its decision to designate
> or not designate a requested haul route as a basis for a contract revision.

(Id.)

As the above specification makes clear, a contractor cannot assume a

particular road will be designated the haul road for a particular project.

After CSI's bid was accepted, a preconstruction meeting was held in April

2017 at the MnDOT offices in Detroit Lakes, Minnesota.  (Id., Ex. A (Sweep Dep.

at 32).)  At the meeting were CSI representative Alex Sweep, MnDOT project

manager Ross Hendrickson, Mahnomen County Engineer Jonathan Large, as

well as others involved in the Highway 59 project.  (Id.)  As County Engineer,

Large is responsible for overseeing all county roads in Mahnomen County, and is

responsible for the maintenance and upkeep of all county roads.  (Large Aff. ¶ 2.)

At this meeting, CSI proposed that it would ask MnDOT to designate County

State Aid Highways ("CSAH") 5, 6 and 10 as the haul roads, as well as roads in

other counties.  (Id.)  CSI also proposed that it would haul 80,000 pound loads

across the haul roads, which would exceed the spring weight restrictions on

those roads.  (Id. at 34.)  Large made it known at that meeting that he objected to

the use of CSAH 5, 6 and 10 as haul roads because he knew those roads were in

poor condition, and he did not believe they could sustain that type of load over the course of the project and because portions of CSAH 5 and 10 would be undergoing construction in 2017.  (Large Aff. ¶ 10.)

On May 5, 2017, Large sent an email to his counter-part at Norman County to inform her of his intent to get an agreement for damages to haul roads with MnDOT.  (Brown Decl., Ex. N.)  He further stated: "I said we will need something like this in place prior to allowing CSI to haul, because if we don't there is no way MnDOT is going to be able to hold CSI accountable without a lawsuit . . . and we get the shaft."  (Id.)

Another meeting was held on May 9, 2017, during which MnDOT informed CSI and Large that MnDOT would conduct testing on the proposed haul roads, including the use of a pavement rating van and a falling weight deflectometer.  (Id. ¶ 11; Fullerton Aff., Ex. A (Sweep Dep., Ex. 3 (Hendrickson email dated May 10, 2017 to CSI and Large, in which he noted that MnDOT would not designate CSAH 5, 6 and 10 as haul roads pending further investigation of the condition of the roads in question).)  The testing confirmed Large's concerns about the lack of strength of CSAH 5, 6 and 10.  (Large Aff. ¶ 11.)

On or about May 18, 2017, Hendrickson spoke with CSI representatives and was informed that Large had told them that the County planned to leave the spring restrictions in place until MnDOT comes up with a plan in writing to compensate the County for damages on County routes.  (Brown Decl, Ex. O.) Later that day, Hendrickson decided he was going to designate only some of the haul routes that CSI had proposed, and that CSI would have to make arrangements with the governing authority with regard to the non-designated roads and fix any damage to those roads as a result of their use as a haul road. (Id., Ex. P.)

On May 26, 2017, MnDOT informed CSI that it would designate portions of CSAH 5 (9 ton portion) and 10 (9 ton portion) as haul roads with a nine-ton weight restriction and that it would designate CSAH 6 as a haul road with a seven-ton weight restriction.  (Fullerton Aff. Ex. A (Sweep Dep., Ex. 5).)  A map was also provided which set forth the routes to be used.  (Id. Ex. 1.)   MnDOT did not designate all of the haul roads proposed by CSI.  (Id. Ex. 2.)

After construction began, CSI informed Large and MnDOT that CSI planned to use portions of CSAH 6 and 10 that were not designated as haul roads as a return route for its empty trucks starting the following week, and that

it would continue using CSAH 5 and 10 (9 ton portion) into the west side of

Mahnomen.  (Id. Sweep Dep., Ex. 6 (email dated July 14, 2017).)   Large

responded by reiterating that CSAH 10 is not a haul road, and that the County

does not have an arrangement with CSI to use that route.  (Id.)  He further stated

that shouldering had not been completed on the road, and that the contractor

completing the shouldering would be doing the work the following week, and

pavement after that.  He concluded by stating "I cannot allow this as a haul route

at this time."   (Id.)   CSI responded that it believed it did not need an agreement

to use the road as the road was open and they would be using the road pursuant

to the posted limits.  (Id.)  Large responded by telling CSI to "[m]ake all vehicle

trips, both loaded and unloaded, between material sources and the project on

designated haul roads."  (Id.)  Later that same day, CSI sent an email to

Hendrickson stating: "Ross, Please designate these roads for the legal posted

limits or direct us to not use the road."  (Id.)

Hendrickson responded in an email dated July 17, 2017, in which he wrote:

"Alex, Any use of the county roads is with an agreement between CSI and the

local road authority per specification.  MnDOT has already designated routes for

this project as stated in a prior email; if you shall choose to use alternate routes, it

is solely at the discretion of CSI and the local road authority." (Id.)  Despite

being told by MnDOT not to use the road without agreement with the local road

authority, CSI responded that they would use the road with legal loads.  (Id.)

During the morning of July 18, 2017, the Mahnomen County Board of

Commissioners approved a change to the weight restriction on CSAH 10 from

five-ton axle weight to five-ton total weight.  (Id. Ex. A (Sweep Dep. at 12); Large

Aff. ¶ 16.)  Before noon that day, County employees posted the new restrictions.

(Large Aff. ¶ 16.)  Large spoke with Hendrickson just prior to 1 p.m. to inform

him of the change in weight restriction on CSAH 10 and asked him to contact CSI

and let them know of the weight change.  (Id. ¶ 17.)  Hendrickson then sent CSI

an email at 1:19 p.m. notifying them of the weight change.   (Id. Ex. B.)

At approximately 2 p.m., Large observed two CSI trucks operating on

CSAH 10 in a Mahnomen County work zone.  (Id. ¶ 18.)  Initially, he did not

know if the trucks were loaded, but he concluded that a loaded truck would

have been in violation of the new weight restrictions, as well as the prior weight

restriction, and an empty truck would have been in violation of the new weight

restriction.  (Id.)

Large motioned the drivers to pull over.  (Id. ¶ 19.)  The first CSI truck stopped by Large was driven by Peggy Strommen.  (Strommen Decl. ¶ 1.)  In her declaration, she said on July 18, 2017, she was stopped near the junction of CSAH 5 and 10 at approximately 2:11 p.m. when she encountered Large's vehicle blocking the road.  (Id.)  Large told her she couldn't haul on the road and then he pointed to the new weight restriction sign.  (Id. ¶ 2.)  She was then told she had to wait until law enforcement arrived.  (Id.)  A second CSI truck driven by Mark Koelln was also stopped.  (Id.)  She asserts she and Koelln were detained from 2:11 to 5:30 p.m.  (Id.)

Large first called the local sheriff's office, who told him they did not have the capacity to address the reported situation, so the White Earth police department responded instead.  (Large Aff. ¶ 19.)  The White Earth Tribal Police did arrive on the scene, but they also determined they could not do anything, and that the State Troopers had to be called.  (Brown Decl., Ex. K.)

When the State Troopers arrived at the scene, both CSI trucks were weighed, and Ms. Strommen was told her truck exceeded the weight limit and would be issued a citation.  (Id.)

Large asserts he remained on the scene for approximately two hours, after which he and the trucks were permitted to leave by law enforcement.  (Id. ¶ 19.)

In an email sent the next morning, Alex Sweep wrote to Allan Minnerath, CSI owner and head project manager, that Mark Koelln had reported to him that while he and Strommen were stopped, he witnessed two separate county workers changing signs for CSAH 5 going east of CSAH 10 from 7 ton axle weight to 5 ton.  (Brown Decl, Ex. R.)  He also witnessed an Aggregate Industries mixing truck and another gravel truck drive by and that Large did not react.  (Id.)

## II.    Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).  The party opposing summary

judgment may not rest upon mere allegations or denials but must set forth

specific facts showing that there is a genuine issue for trial.  Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## III.    Discussion

CSI has asserted the following claims against Defendants:  Count I –

Violation of Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983;

Count II – Trespass to Chattels; Count III – Tortious Interference with Contract.

### A.    Section 1983

#### 1. Qualified Immunity

A government official that is sued under Section 1983 in his individual

capacity may raise the defense of qualified immunity.  Sisney v. Reisch, 674 F.3d

839, 844 (8th Cir. 2012).  "Qualified immunity protects government officials from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known."  Id. (citations omitted).

To determine whether Large is entitled to qualified immunity, the Court must conduct the following inquiry: "(1) whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct."  Id.

CSI asserts that Large violated its Fourth Amendment rights when he exceeded the scope of his duties by detaining two CSI trucks for over three hours.  CSI further alleges that Defendants violated its rights under the Fourteenth Amendment by 1) depriving it of equal protection of the laws by selectively changing its road weight limits to damage CSI and then selectively enforcing those weight limits only against CSI; and 2) failing to give appropriate notice of the change in the road weight restrictions, and then depriving it of its liberty and property by detaining its trucks for over three hours.

### a.  Fourth Amendment Violation

CSI alleges that Large exceeded the scope of his duties when he detained two CSI trucks for over three hours.  A "seizure" occurs "when there is some meaningful interference with an individual's possessory interests in that property."  United States v. Jacobsen, 466 U.S. 109, 113 (1984).  To be lawful, the

seizure must be reasonable; that is based on "individualized suspicion of wrongdoing." City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). An unreasonable seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968); see also California v. Hodari D., 499 U.S. 621, 627 (1991) (finding that an arrest requires either a show of force or submission to the assertion of authority); United States v. Mendenhall, 446 U.S. 544, 554 (1980) (finding that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave").

CSI asserts the three-hour detention was a meaningful interference with its right to use its trucks, and that such seizure was not reasonable because it is not clear that holding the trucks for over three hours was necessary for road safety or that Large had the authority to do so. CSI further alleges that Large acted maliciously, because only CSI trucks were detained on the day in question while other similar trucks were allowed to use CSAH 10.

Under the facts presented in the case, the Court finds that even if a seizure occurred, the duration of the seizure was not overly long and was reasonable

under the circumstances.  Large, who is responsible for the maintenance and

upkeep of county roads in the County, had sufficient reason to investigate upon

witnessing the CSI trucks operating on CSAH 10 in obvious violation of the road

posting and of his previous directives.  The record is undisputed that a loaded

truck would have violated the prior weight restrictions on CSAH 10 as well as

the new restrictions put in place on July 18, 2017.  (Fullerton Aff., Ex. A (Sweep

Dep. at 12).)  Further, when Large saw the two CSI trucks operating on CSAH 10

on July 18, 2017, and motioned for them to pull over, Large informed the drivers

that he was going to call law enforcement to the scene to handle the matter

further.

But even assuming that CSI has established a violation of its Fourth

Amendment rights, the Court finds that CSI has failed to put forth any authority

or evidence demonstrating there is a bright-line rule that only a law enforcement

officer may request that commercial activity on a public road come to a brief halt

while compliance with local laws is confirmed.  On the other hand, there is

authority to support traffic control or detention mechanisms or actions taken by

non-police officers.  See e.g., Minn. Stat. § 629.37 (authorizing an arrest by private

person under limited circumstances); Minn. Stat. § 169.06, subd. 4a ("A flagger in

a work zone may stop vehicles, hold vehicles in place, and direct vehicles to proceed when it is safe.")  Under these circumstances, the Court finds that Defendants are entitled to qualified immunity as to the Fourth Amendment claim.

### b.  Fourteenth Amendment Violation

CSI further alleges that Defendants violated its rights under the Fourteenth Amendment by 1) depriving it of equal protection of the laws by selectively changing its road weight limits to damage CSI and then selectively enforcing those weight limits only against CSI; and 2) failing to give appropriate notice of the change in the road weight restrictions, and then depriving it of its liberty and property by detaining its trucks for over three hours.

### i.  Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  These types of claims are examined under a two-part test: "whether there exists a liberty or property interest which has been

interfered with by the government"; and "whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity or hearing appropriate to the nature of the case.'" <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (citation omitted).

CSI claims it had no notice that the weight restrictions had been changed on CSAH 10 before being deprived of its rights to use its trucks for allegedly violating the new weight restrictions. The record does not support this claim, however. Prior to the incident at issue here, CSI was aware of Large's concern of using CSAH 10 as a haul route, and that up until the CSI trucks were stopped, it knew that MnDOT and Large had not permitted the use of CSAH 10 as proposed. Further, CSI was notified of the change of the weight restrictions on CSAH 10 in an email from Hendrickson to Alex Sweep and Allen Minnerath of CSI at 1:19 p.m., and the CSI trucks were then stopped at 2:11 p.m. (Strommen Decl. ¶ 2.)

Finally, CSI has provided no authority suggesting that any pre-deprivation notice is required in the context of a traffic stop. Thus, even if there was a

deprivation, CSI was entitled to no more notice than any other driver would be entitled to: a posting of the applicable weight restrictions.  Minnesota law provides that notice of weight restrictions are to be given via a posted sign. Minn. Stat. § 169.87.  In her declaration, driver Peggy Strommen states that Large told her she couldn't haul on the road and pointed to the posted sign. (Strommen Decl. ¶ 2.)  That Strommen acknowledges a posted sign as to weight places the issue of whether or not CSI had notice of the change in weight beyond dispute.

Again, even assuming that CSI has established its constitutional rights under the Fourteenth Amendment were violated, the Court finds that CSI has failed to put forth any authority or evidence demonstrating there is a bright-line rule that a county or local authority cannot change its weight restrictions following credible indications that its roads will imminently come under increased load or traffic.  Large, as county engineer, is charged with ensuring Mahnomen County roads are in good repair.  He made his concerns known at the preconstruction meeting, and testing conducted by MnDOT confirmed his concerns.  (Large Aff. ¶ 11.)  CSI has not presented any testing of its own, only visual observation by CSI staff, to show that Large's concerns were unwarranted.

Further, CSI has not demonstrated that Large violated the law by keeping the

spring weight restrictions in place longer than usual, or when he obtained

permission from the County Board to change the posted weight restrictions on

the portion of CSAH 10 at issue here.  Accordingly, Defendants are entitled to

qualified immunity on CSI's claim that Defendants violated its right to due

process.

### ii.      Equal Protection Violation

> The Equal Protection Clause requires that the government treat all
> similarly situated people alike.  The Supreme Court recognizes an equal
> protection claim for discrimination against a class of one.  The purpose of a
> class-of-one claim is to secure every person within the State's jurisdiction
> against intentional and arbitrary discrimination, whether occasioned by
> express terms of a statute or by its improper execution through duly
> constituted agents. It is recognized law that a class-of-one claimant may
> prevail by showing she has been intentionally treated differently from
> others similarly situated and that there is no rational basis for the
> difference in treatment.

Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005) (citations omitted).

To prove an equal protection claim, a plaintiff must prove: the person,

compared with others similarly situated, was selectively treated; and 2) that such

selective treatment was based on impermissible considerations such as race,

religion, intent to inhibit or punish the exercise of constitutional rights, or

malicious or bad faith intent to injure a person.  <u>Advantage Media LLC v. City of</u>

<u>Hopkins</u>, 379 F. Supp. 2d 1030, 1045-46 (D. Minn. 2005).  Where a plaintiff

constitutes a class of one and does not allege membership as part of a class or

group, a plaintiff must establish 1) that he has been treated differently than

others similarly situated; and 2) that there is no rational basis for the difference in

treatment.  <u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

    CSI claims that Large deprived it of equal protection of the laws by

changing the road weight specifically to damage CSI, and by selectively

enforcing those weight limits only against CSI.  It was only when CSI announced

it would use CSAH 10 did Large seek to reduce the weight limitations on that

road.  Also, after Large stopped the two CSI trucks, Large allowed other

similarly sized trucks to use CSAH 10 freely.  CSI claims that Defendants have

failed to show there was any rational basis for the difference in treatment.  The

Court disagrees.

    The record supports a finding that Large had a rational basis to stop the

CSI trucks.  While CSI would attribute Large's actions to Large's personal malice,

the record shows that CSI had indicated that it intended to use the roads

notwithstanding MnDOT's refusal to designate them and remove them from

County control, as well as Large specifically informing CSI not the use the road. (Fullerton Aff., Ex. A (Sweep Dep. Ex. 6).)  Large had a rational basis to stop the CSI trucks because the road in question had not been designated a haul road, which meant the County could not have looked to MnDOT to restore the roads or correct any damage done by CSI's hauling activities.  (Id. Ex. D (MnDOT standard specification 2051.3).)

As to the claim of selective enforcement, CSI offers no authority supporting its position that every road restriction violation must be enforced against every single known violator of the restriction.  For example, no court has held that an equal protection claim can stand where the alleged violation is simply that one speeding vehicle was pulled over while other cars sped by.

There is also no evidence other companies were treated differently than CSI.  Knife River was present on CSAH 10 after the new weight restriction was posted because it was working in connection with a County project to complete the shouldering on that road.  (Second Fullerton Aff., Ex. A (Large Dep. at 62).) Further, CSI has not put forth sufficient evidence to demonstrate there is a genuine issue of material fact that other trucks that were allowed to use the road on the day in question were similarly situated to the CSI trucks.

But even if CSI was targeted, Large had a rational basis for confronting CSI

because CSI had already announced its intention to violate MnDOT's directive

that CSI work with the County to arrange for hauling on County roads.   Under

these circumstances, the Court finds that CSI has failed to demonstrate that its

rights to Equal Protection were violated.  Accordingly, the Court finds that

qualified immunity applies, and CSI's claim of an Equal Protection violation

must be dismissed.

### B.  Tortious Interference with Contract

CSI claims that Large intentionally and improperly prevented CSI from

using CSAH 10 in the performance of its contract with MnDOT by maliciously

changing the highway weight limit signs and stopping CSI's trucks thereby

causing CSI to incur additional costs and expenses in the form of project delays

and related costs.

A claim for tortious interference with contract has the following elements:

1) the existence of a contract; 2) knowledge of the contract by the alleged

wrongdoer; 3) intentional procurement of its breach; 4) no justification for the

interference; and 5) damages.  Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994).

Where there is no induced breach of contract, recovery is possible where the

defendant commits an act "injuring or destroying persons or property which

retards, makes more difficult, or prevents performance" of the contract.

Continental Research, Inc. v. Cruttenden, Podesta & Miller, 222 F. Supp. 190, 198

(D. Minn. 1963).

CSI argues that because there are fact questions as to whether the

proposed roads were acceptable, summary judgment on this claim is

inappropriate.  In support, CSI refers to a parallel state court proceeding it has

brought against MnDOT in which the court determined there were fact questions

as to whether the proposed haul roads were "acceptable."  (Brown Decl. Ex. S at

6).)  Assuming it will ultimately prove the roads were acceptable, CSI argues that

MnDOT should have designated them, and CSI would have had a contractual

right to use the haul roads in question.

Defendants argue, and the Court agrees, that whether the MnDOT contract

was actually breached is not relevant to CSI's interference claim in this action

because CSI has not alleged a tortious interference claim which arises from a

breach of contract.  Instead, CSI alleges that Large intentionally and maliciously

prevented CSI from using CSAH 10 in the performance of its contract with

MnDOT and that Large's actions caused CSI's performance to be more
expensive.  (Am. Comp. ¶¶ 52 and 53.)

CSI also claims that Large was not justified when he prevented CSI trucks
from using CSAH 10 for hauling.  First, CSI argues justification is typically a fact
question reserved for a jury.  Kjesbo, 517 N.W.2d 585, 588 (Minn. 1994).  Second,
there is evidence in the record that shows that the means by which Large
interfered with CSI's contract were contrary to the law - that Large stopped the
trucks despite knowing that he had no legal right to do so.  Finally, CSI claims
that Large acted improperly when he maintained the spring weight restrictions
at improper times and for improper means.  CSI argues that spring weight
restrictions are typically imposed for an approximate eight week period, and if
counties wish to impose continued weight restrictions, it can only do so where
the road, by reason of rain, snow or other climatic conditions will be seriously
damaged or destroyed unless the use of vehicles thereon is prohibited or the
permissible weights thereof reduced.  Minn. Stat. § 169.87, subd. 1(a).  CSI alleges
that Large violated these requirements because he continued the spring weight
restrictions long past the time they are usually removed in an effort to obtain
additional repair money from MnDOT, and by doing so, Large was attempting

to end run around the statutory scheme permitting MnDOT to take over haul roads in exchange for restoring the streets to as good condition as they were prior to the designation of the same as a temporary trunk highway.  Minn. Stat. § 161.25.

"A defendant may avoid liability [for a tortious interference claim] by showing that his actions were justified by a lawful object that he had a right to pursue."  Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 32 (Minn. 1982); Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) (an action for interference with contract does not lie where the alleged interferer had a legitimate interest, economic or otherwise, in the contract and employed no improper means).

Here, there is no dispute that as county engineer, Large was responsible for overseeing all county roads and that they be properly maintained.  (Large Aff. ¶ 2.)  Further, a county engineer, if authorized by the county board, "may impose weight and load restrictions on any highway under its jurisdiction."  Minn. Stat. § 163.02, subd. 3.  The record further demonstrates that Large had concerns that portions of the proposed haul roads at issue could not sustain the type of load proposed by CSI over the course of the project, and that his concerns

24

were affirmed through MnDOT testing.  (<u>Id.</u> ¶ 11.)  Based on his concerns, and

his knowledge that CSI intended to use a portion of CSAH 10 notwithstanding

the fact it was not designated a haul road, Large concluded continued weight

restrictions were appropriate.  Thereafter, the county board authorized Large to

modify the weight limits on CSAH 10 to impose additional restrictions.  (Large

Aff. ¶¶ 5 and 16.)  Based on these undisputed facts, the Court finds that Large

acted within the law when he maintained the spring weight restrictions and

posted new weight restrictions on CSAH 10 on July 18, 2017.  As a result, Large's

exercise of authority over that road which was under his jurisdiction is not an

unjustified and intentional interference into CSI's contract involving the desired

use of that road.  <u>See</u> <u>Spice Corp. v. Foresight Marketing Partners, Inc.</u>, No. 07-

4767, 2011 WL 6740333, at *19 (D. Minn. Dec. 22, 2011) ("Mere knowledge that a

decision might affect other parties' contracts is not the same as intentional,

unjustified interference.").

Based on the facts presented, and the applicable law, the Court finds that

Defendants are entitled to summary judgment on its claim of tortious

interference with contract as any interference by Large was justified.

## C.  Trespass to Chattels

A claim of trespass to chattels involves one who intentionally dispossessed another of the chattel or used or intermeddled with a chattel in the possession of another.  Restatement (Second) Torts § 217 (1965).  Such a claim "typically involves less than a complete divestment of the plaintiff's possessory rights in his property."  Buzzell v. Citizens Auto. Fin., Inc., 802 F. Supp.2d 1014, 1024 (D. Minn. 2011).   To succeed on a claim for trespass for chattels, a plaintiff must demonstrate the defendant's control over his property was wrongful or without legal justification.  Strei v. Blaine, 996 F. Supp.2d 763, 792 (D. Minn. 2014).

> A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 217 (1965). Dispossessing includes taking the chattel from the person in possession without his consent, obtaining possession of the chattel by fraud or duress, "barring the possessor's access to the chattel," or destroying the chattel while it is in another's possession. Id. § 221 (1965). "Intermeddling" means intentionally coming into physical contact with the chattel. Id. § 217 cmt. e (1965). Liability arises if the defendant dispossesses the possessor of the chattel, impairs its condition, quality, or value, or deprives the possessor of the chattel's use for a substantial period of time.

Olson v. Labrie, No. A12–1388, 2013 WL 1788531, at *3 (Minn. Ct. App. April 29, 2013).

CSI claims that summary judgment on this claim is inappropriate as there are fact questions as to whether Large intended to interfere with CSI's possessory

rights to its trucks.  However, even when viewing the facts in CSI's favor, CSI

has failed to demonstrate that Large exercised any control over the trucks

without legal justification.  See <u>Strei v. Blaine</u>, 996 F. Supp.2d 763, 792 (D. Minn.

2014).  Further, CSI must also show that the alleged intrusion over the trucks was

for a substantial amount of time.  <u>Id.</u>  In this case, the trucks were stopped for

approximately three hours, and during that time, there is no evidence that Large

exercised the degree of dominion or control over the trucks or challenge CSI's

ownership interest to support a claim of trespass to chattels.  Accordingly, the

Court finds that Defendants are entitled to summary judgment on this claim as

well.

　　IT IS HEREBY ORDERED that Defendants' Motion for Summary

Judgment [Doc. No. 64] is **GRANTED.**   This matter is hereby dismissed with

prejudice.

　　**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date:   August 31, 2020                    s/ Michael J. Davis
                                           Michael J. Davis
                                           United States District Court